Common Pleas Court of Wood County.

IN RE CITIZENS SAVINGS BANK OF PEMBERVILLE.

Decided February 24, 1933.

*Chas. G. Saffin, Jr., Ray D. Avery, Solon T. Klotz,* for the Citizens Savings Bank.

*B. F. James,* for intervening petitioners.

CONN, J.

The matter before the court is the application of the Citizens Bank Company, of Pemberville, Ohio for authority to resume business.

It is alleged by the applicants that on the 18th day of December 1931, the Board of Directors of said bank by resolution regularly adopted, requested I. J. Fulton, superintendent of banks of the state of Ohio, to take possession of the business and property of said bank, and that in response to said request and on said date, the said I. J. Fulton as such superintendent, did take possession of the business and assets of said bank and ever since said date has been and is now in possession thereof.

It is further alleged that a plan for the resumption of

business of the aforesaid bank was formulated by the reorganization committee, which committee was selected from the depositors and stockholders of said bank. Attached to the application is a copy of said plan, marked "Exhibit A" and is styled "Depositors Agreement, Waiver, Release and Consent." All depositors consenting to this plan, agreed to waive and release 50% of any and all deposits in said bank subject to the terms and conditions set forth therein, consisting of eight separate specifications, and containing the proviso that depositors having a balance on deposit in said bank of less than $10.00 would not be subject to said agreement and would have the right of immediate withdrawal of their respective deposits upon the Citizens Savings Bank Company's resuming business.

It is further alleged that the said plan was approved and accepted by 100% of the stockholders of said bank and 98% of the depositors thereof. That a meeting of the stockholders of said bank was thereafter called for the purpose of electing directors and transacting such other business as might lawfully come before the meeting. That an election of directors was held and a code of regulations adopted and that the directors so elected accepted in writing the positions of directors of said bank, Exhibits "B & C" as evidence of said action being attached to the application.

It is further alleged that the trustees were duly chosen by the depositors to represent them in the manner set forth in the plan of reorganization and have accepted said trust. That there has been paid into the reorganization committee in cash for 1000 shares of stock in said bank at $25.00 per share, and $10.00 additional for each share as surplus, the total sum of $35,000.00. That upon approval by the court and the superintendent of banks of the plan for resuming business, the said cash in the sum of $35,-000.00 will be paid to said bank by the said committee.

It is further alleged that it will be necessary for the superintendent of banks to turn over to said bank the cash now in his hands, less discounts and expenses paid therefrom, and all other assets that came into his hands as liquidating agent of said bank, upon said superintendent

of banks being relieved of any and all responsibility by reason of his having in his possession the business and property of said bank.

Upon the filing of said application an order was made directing the said I. J. Fulton as superintendent of banks and the stockholders, depositors and other creditors to show cause why the court should not approve the plan for the resumption of business of said bank. This order fixed the time of hearing of the said application, and ordered a published notice given thereof.

By leave of court, intervening petitions were filed by George Russell and by Charles Burgoon and wife, each having deposits in said bank of approximately $200.00, objecting and excepting to the plan for the resumption of business of said bank, denying certain allegations in the application and alleging that the court had no power to abrogate the terms of the contract under which the deposits were made in said bank, and that the granting of said applications was violative of the constitutional rights of said intervening petitioners.

Upon the evidence adduced, which evidence includes: final statement of assets and liabilities of said bank; the stock subscription agreement; the depositors agreement, waiver, release and consent signed by 98% of the depositors, and representing more than 98% of the depositors, also a list of those depositors and the amount of their respective deposits, who had not signed the depositor's agreement; also the written consent of the superintendent of banks to the proposed plan for the resumption of business, and a prayer that the plan be approved by the court; also the oral statement and memorandum of Judge Elmer G. McClelland, *amicus curiae,* on behalf of depositors who are minors and incompetents; and the well prepared briefs of counsel; and after careful study of the evidence and briefs, the court has reached the conclusion that the application for the re-opening of the bank and the resumption of business, should be approved.

Section 710-89, General Code, among other things, provides that any bank taken possession of by the superintendent of banks under the authority of said section, may resume business, with the consent of the superin-

tendent of banks, upon such terms as may be approved by the Common Pleas Court in the county in which such bank is located. The plan for opening the bank in question not only has the express indorsement of all the stockholders, 98% of the depositors and more than 98% of the deposits, but also the approval and consent of the superintendent of banks.

This extraordinary situation presents a strong case in favor of the approval of the application and the re-opening of the bank. The statute gives the superintendent of banks the exclusive control of the assets and property of a bank closed for liquidation. The statute also requires the consent of said liquidating agent before any bank under his control may resume business. Upon such consent being given by the superintendent of banks in any case, a presumption arises that it is far the best interests of the depositors and creditors of said bank and all other persons concerned to reopen same and that the plan for the reopening of the bank and resumption of business is sound and merits the approval of the court. In the matter of the liquidation of the Bank of Leipsic, of Leipsic, Ohio, Judge Fred H. Wolf in his unreported opinion approving the plan for its resumption of business said:

"The presumption ought to be, and will by this court be assumed to be that the superintendent believes that the resumption of business under the proposed plan will be for the benefit not only of those consenting, but of those not consenting, and this presumption will be indulged by the court, because the superintendent of banks, after the investigation he has made of the assets of this bank, his knowledge of the liquidation of banks, and how the assets decrease in value under the process of liquidation, leads the court to believe that the superintendent is acting in the interest of all the depositors."

Furthermore, the court has reached the conclusion that the approval of the application in this case and the resumption of business by the bank, does not contravene the constitutional rights of the excepting depositors, nor of those depositors who, because of infancy or incompetency, have had no legal notice of the hearing of the application, and made no defense herein by guardian *ad litem*, as provided by statute.

The court must accept the constitutionality of the provisions of the statute, until it clearly appears that such statute is unconstitutional. The application in question, supported as it is by such an overwhelming majority of all parties having a direct interest, and having for its object and purpose the establishment of a banking institution in the village of Pemberville, with its economic benefits to all the people of that community, is related to the public welfare and the general good of that village and surrounding country. The business of banking is charged with a public interest and is subject to regulation by law in promoting the general welfare of the people.

As applied to the facts in this case, the statute in question, is abundantly sustained under authority of the police power of the state.

It does not appear from the evidence in the case that the approval of the application impairs the obligation of the contract of the depositors, within the meaning of the state or federal constitution. The rights of all the depositors and creditors, consenting and not consenting, remain the same in and to the assets of the bank that are turned over to the trustees for liquidation and distribution. Said assets are now held by the superintendent of banks under authority of law for that purpose and to the same end. The presumption that these trustees will safeguard the rights of the depositors must prevail, as there is no showing to the contrary. As to all assets turned over to the bank upon resumption of business, the rights and remedies of all depositors and creditors, not consenting to the plan for resuming business, remain unaffected. And as to such assets as may be received by the bank upon resumption of business, the non-consenting depositors are entitled to receive from the bank upon resuming business that proportionate share or portion of their deposits respectively, as the assets surrendered bear to all of the assets of said bank at the time it resumed business.

From the evidence in the case, it nowhere appears that the plan for the resumption of business by said bank is arbitrary, unreasonable, unjust or inequitable. It nowhere appears that said plan will invade or prejudice

the rights, constitutional or otherwise, of the non-consenting depositors and creditors. On the other hand, it affirmatively appears that the rights of all the depositors and creditors are conserved and protected, and that no right will be invaded and none impaired by the approval of the application.

Counsel may prepare entry accordingly with exceptions on behalf of the intervening petitioners.